IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LYNN MARIE FUERST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:15CV1054 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

*Pro se* Plaintiff Lynn Marie Fuerst[1] brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for benefits. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits and supplemental security income in April of 2012 alleging an onset date of April 13, 2012, later amended to June 9, 2012. (Tr. 16, 38-39, 252-61.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 111-15, 118-23, 131-35, 136-40.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 4, 2014. (*Id.* at 146, 36-62.) After a hearing, the ALJ

---

[1] The Court has endeavored to liberally construe Plaintiff's *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[2] Unless otherwise noted, transcript citations refer to the administrative record in this case filed manually with Defendant's answer. (Docket Entries 8-9.)

determined that Plaintiff was not disabled under the Act. (*Id.* at 16-35.) On October 7, 2015, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE COMMISSIONER'S DECISION

The ALJ followed the well-established five-step[3] sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

date of June 9, 2012. (Tr. 18.) The ALJ next found at step two that she had the following severe impairments: Wilson's disease, rheumatoid arthritis of the left knee, back disorder, depressive disorder, and anxiety-related disorder. (*Id.* at 19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. The claimant can stand and/or walk for approximately two (2) hours and can sit for approximately six (6) hours in an eight-hour workday with normal breaks. She could occasionally balance, stoop, kneel, crouch, crawl and climb stairs but should never climb ladders or scaffolds. The claimant must avoid moderate exposure to extreme heat and cold. The claimant must avoid exposure to vibration, unprotected heights and hazardous machinery. The claimant's work would be limited to simple, routine and repetitive tasks. Her work would also be limited to low stress work, meaning the claimant could not perform jobs with strict quotas. The claimant should have no interaction with the general public unless it is merely superficial. She should have occasional interaction with co-workers.

(Tr. 21.) At the fourth step, the ALJ determined that she was unable to perform her past relevant work. (*Id.* at 28.) At step five, the ALJ determined that there were jobs which Plaintiff could perform consistent with her RFC, age, education, and work experience. (*Id.* at 29.)

### IV. ISSUES AND ANALYSIS

Plaintiff raises two general objections. First, she contends that the ALJ did not adequately develop the record. (Docket Entry 15 at 21.) Second, Plaintiff contends that the

3

ALJ's RFC and credibility findings are unsupported by substantial evidence. (*Id.* at 24, 26, 29.) As explained below, these objections lack merit.[4]

### A. The ALJ Adequately Developed the Administrative Record.

The "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty includes developing the claimant's "complete medical history." 20 C.F.R. §§ 404.1512(d), 416.912(d). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

In the case of a *pro se* claimant, an ALJ has "a duty to assume a more active role in helping [the] claimant[] develop the record," *Craig*, 76 F.3d at 591 (citation omitted), and must adhere to a "heightened duty of care and responsibility." *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980) (citation omitted). The Fourth Circuit has explained that an ALJ should "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980) (citations omitted). An ALJ may develop the record by subpoenaing and questioning witnesses, requesting records, or arranging medical examinations or tests for the claimant. *Fleming v.*

---

[4] Plaintiff's pleadings raise a number of overlapping issues and sub-issues which the Court has attempted to group and present logically for ease of reference.

*Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003). The decision of an ALJ will not be overturned for failure to develop the record unless "such failure is prejudicial to the claimant." *Marsh*, 632 F.2d at 300 (citations omitted); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).

Here, Plaintiff contends that medical records from Citrus County Health Clinic are "illegible and hard to read" and that "the ALJ couldn't read the doctors['] notes and drew the wrong conclusions." (Docket Entry 15 at 22.) This argument fails for a number of reasons.

First, Plaintiff was represented by counsel at the administrative hearing, but is now proceeding *pro se* before this Court. (Tr. 36-62.) Consequently, the heightened duty described of an ALJ to help develop the record for a *pro se* Plaintiff is not at issue here. Second, Plaintiff also purports to read the very records she describes as illegible and therefore essentially admits that the records can be read in pertinent part. (Docket Entry 15 at 22.)

Third, even assuming the records in question are only partially legible, the record still permits a disability determination. This is because, for example, the agency arranged for Plaintiff to participate in consultative physical and mental health examinations. (Tr. 403-15.) Thus, the record was adequately developed to allow the ALJ's determination. *See Jones v. Astrue*, No. CIV. SKG-09-1683, 2011 WL 5833638, at *15 (D. Md. Nov. 18, 2011) (unpublished).

Fourth, even assuming for the sake of argument the ALJ had a duty to solicit additional information here (which is not the case for the reasons set forth above), Plaintiff has not pointed to medical evidence suggesting that the decision of the ALJ might reasonably have been different had that evidence been before the ALJ when his decision was rendered. *Marsh*, 632 F.2d at 300; *King v. Califano*, 599 F.2d at 599.

Fifth, Plaintiff's argument is further without merit to the extent she contends that information contained in the review of systems ("ROS") section of her records constitutes objective examination evidence. (Docket Entry 15 at 22.) "[T]he ROS is designed to uncover subjective complaints in particular systems." *Brown v. Colvin*, No. 1:15-CV-46, 2016 WL 1261211, at *7 (W.D.N.C. Mar. 31, 2016). Reports in the ROS are a recordation of subjective complaints, not the physician's assessments. *See Fothergill v. Colvin*, No. 2:15-CV-143-JHR, 2016 WL 183643, at *4 (D. Me. Jan. 13, 2016) (unpublished); *see also Craig*, 76 F.3d at 590 n. 2.

Last, regarding Plaintiff's claim that the ALJ misread or misinterpreted the record (Docket Entry 15 at 22-23; Docket Entry 21 at 6), the decision of the ALJ here was, as discussed further below, overwhelmingly supported by substantial evidence. Any such error here is at most harmless. *Bishop v. Comm.'r of Soc. Sec.*, 583 F. App'x 65, 66 (4th Cir. 2014). For these reasons, Plaintiff's contention that the ALJ failed to develop the record is without merit.

## B. The ALJ's Decision Is Supported by Substantial Evidence.

### i. The RFC Finding Is Supported by Substantial Evidence.

Plaintiff next contests the ALJ's RFC determination. (Docket Entry 15 at 26-30.) The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's

6

impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.3d at 562-63. An ALJ need not discuss every piece of evidence in determining the RFC. *See, e.g., Matney v. Colvin*, No. 1:09–CV–229, 2013 WL 1788590, *3 (M.D.N.C. April 26, 2013) (unpublished). What is required is "an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Matney*, 2013 WL 1788590, at *3.

Here, the ALJ formulated Plaintiff's RFC after considering the entire record, including Plaintiff's subjective complaints, her daily activities, her medical records, and the relevant medical opinions. (Tr. 21.) *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("[T]he Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.").

Specifically, the ALJ properly relied upon Plaintiff's medical records from Citrus Memorial Hospital and Citrus County Health Department, which do not indicate that she is more limited than articulated in the RFC. (Tr. at 22-23, 381-402, 416-498.) The ALJ also properly relied upon the medical opinions of the consultative medical professionals that examined Plaintiff, which do not articulate any limitations more severe than those set forth by the ALJ in the RFC.[5] (*Id.* at 23-25, 404-406. 408-415.) And, likewise, the ALJ also properly

---

[5] Plaintiff also contends that the agency failed to provide a consultant with her medical background. (Docket Entry 21 at 6-8.) 20 C.F.R. § 416.917 provides that if the agency sends a claimant for a consultative examination, it "will also give the examiner any necessary background information about your condition." 20 C.F.R. § 416.927. Here, it is unclear which specific portions of her medical background Plaintiff contends were necessary. However, Plaintiff may be referencing medical documentation regarding swelling in her hand/wrist. (Docket Entry 21 at 6-8.) If so, Plaintiff has failed to demonstrate prejudicial error. Dr. Walls, the consultant in question, noted mild swelling in Plaintiff's hand, however, the doctor noted further that there was no decrease in strength and no decrease in range of motion. (Tr. 26, 412.) No medical evidence in the record suggests otherwise and Plaintiff points to no such evidence. Dr. Wall's opinion is also consistent with the RFC to a limited

7

considered the state agency physicians, who all opined that Plaintiff did not have work-preclusive functional limitations, in setting Plaintiff's RFC. (*Id.* at 27, 63-84, 87-108.) The ALJ also properly took into account Plaintiff's activities of daily living—cooking meals, doing laundry, cleaning, washing dishes, and going shopping—which are inconsistent with allegations of complete disability. (*Id.* at 19, 27, 52, 299-300.) Consequently, the ALJ's RFC finding is supported by substantial evidence.

Plaintiff has pointed to, and the Court has found, nothing that suggests Plaintiff is more limited than her RFC would indicate. Instead, Plaintiff essentially contends that the ALJ should have fully credited all of her subjective allegations. However, as explained below, the ALJ's credibility analysis is also legally correct and supported by substantial evidence.

### ii. The Credibility Findings Are Supported by Substantial Evidence.

Plaintiff also contests the ALJ's credibility determination. (Docket Entry 15 at 24-26.) In *Craig v. Chater*, the Fourth Circuit provided a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or

---

range of light work. Any error here was therefore harmless at most. Plaintiff also insinuates that Dr. Walls was biased. (Docket Entry 21 at 7.) However, this allegation is vague, conclusory, and unsubstantiated and fails for this reason alone. Plaintiff also seems to fault the ALJ for rejecting the medical opinion of a treating physician, yet, Plaintiff never identifies that physician and the Court sees no such opinion. (Docket Entry 21 at 7.) As explained above, no medical examiner ever concluded that Plaintiff was limited beyond the scope of the ALJ's RFC finding. Moreover, while the undersigned is mindful of Plaintiff's *pro se* status, much of her argumentation contests the ALJ's reasonable interpretation of the evidence of record and asks the Court to re-weigh it, which this Court is not permitted to do. *Craig*, 76 F.3d at 589. Last, Plaintiff erroneously asserts that the ALJ failed to consider the fact that she suffered from Wilson's disease in determining her RFC. (Docket Entry 21 at 9-10.) However, the ALJ directly considered this impairment repeatedly in his decision. (Tr. 19, 22-23, 25, 27.)

8

psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b) and 404.1529(b)) (internal alterations omitted). Second, if the ALJ determines that such an impairment exists, the second part of the test then requires her to consider all available evidence, including the plaintiff's statements about her pain, in order to determine whether the plaintiff is disabled. *Craig*, 76 F.3d at 595-96.

While the ALJ must consider the plaintiff's statements and other subjective evidence at step two, he need not credit them to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* at 596. Relevant evidence for this inquiry includes the plaintiff's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors.[6] The regulations do not mandate that the ALJ discuss all these factors in a decision. *See Baggett v. Astrue*, No. 5:08–CV–165–D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished).[7]

---

[6] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (vi) any measures the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[7] Effective March 28, 2016, *see*, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96-7p with Social Security Ruling 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.* The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character" *id.*, and "offer[s] additional guidance to

9

Case 1:15-cv-01054-CCE-JLW Document 22 Filed 10/13/16 Page 9 of 19

Here, after "careful consideration of the evidence" the ALJ concluded that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (Tr. at 27.) Thus, the ALJ performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*) The ALJ then provided ample reasons, explained in greater detail below, in support of step two of the *Craig* analysis.

### a. The ALJ's Decision to Partially Discount Plaintiff's Alleged Physical Limitations Was Supported by Substantial Evidence.

Plaintiff testified that she could only walk 8-10 minutes at a time (Tr. 49), could not lift more than a water bottle on a regular basis (*id.* at 52-53), had pain when she wrote, was unable to type, and sometimes could not button her clothes (*id.* at 47). In considering this testimony the ALJ properly pointed out that it was inconsistent with a June 9, 2012 consultative examination that did show atrophic proximal muscle of the lower extremity, but also showed an unremarkable neurological system, including a steady gait and good hand eye coordination, full muscle strength (5/5), and no spasms. (*Id.* at 23, 410.) Plaintiff's straight leg raise testing was negative, her reflexes were symmetric, and her range of motion was normal. (*Id.* at 23, 411, 413-415.) Although Plaintiff had some difficulty rising from a seated position and getting up and down from the exam table, there was no joint swelling, erythema, effusion tenderness

---

[ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p" id. at *1 n.1. Because the ALJ's decision predates the effective date of SSR 16-3p, this Recommendation will apply SSR 96-7p to Plaintiff's credibility challenge.

10

or deformity in the musculoskeletal system, and there was only mild crepitus in the left knee. (*Id.* at 23, 410-15.) Plaintiff could also lift, carry, and handle light objects; open doors; button shirts; and manipulate a coin. (*Id.* at 23, 411.)

Additional medical evidence further contradicted Plaintiff's allegations. For example, in July of 2012, Plaintiff reported to the ER complaining of a toothache, and her physical examination was unremarkable for musculoskeletal issues. (*Id.* at 22, 417-18, 421). On September 11, 2012, she reported lower back pain, but a normal gait and normal range of motion. (*Id.* at 23, 468.) On October 10, 2012, and while she continued to report back pain, her examination was normal. (*Id.* at 467.) The diagnosis/plan indicated she should have x-rays for her alleged back pain. (*Id.* at 467.) Plaintiff also underwent laboratory testing for copper on November 8, 2012, where her results were normal. (*Id.* at 22, 431.) That same day, Plaintiff underwent x-rays of her left hand and wrist, which showed some swelling but no acute fracture sites.[8] (*Id.* at 429, 445.) She also had a hepatobiliary scan showing patency of the common bile duct and cystic duct, and a normal gallbladder. (*Id.* at 22, 447.)

X-rays on November 30, 2012 revealed degenerative changes and "possible" spasm, but no significant scoliosis or bony abnormality. (*Id.* at 22, 434.) On January 4, 2013, an MRI scan of the upper extension joint due to rotator cuff pain demonstrated only a small bursal

---

[8] Plaintiff contends that the ALJ erred by not finding issues with her hands or wrists a severe impairment at step two. (Docket Entry 21 at 6, 8.) However, any purported step two error here is harmless given the presence of other identified severe impairments at step two and the fact that the ALJ later evaluated Plaintiff's hand and wrist related issues elsewhere in his decision. (Tr. 26.) *See, e.g., Young v. Astrue*, No. 1:09CV1008, 2013 WL 474787, at *10 (M.D.N.C. Feb. 7, 2013) (unpublished); *Garofolo v. Colvin*, No. 1:14CV761, 2016 WL 1092650, at *4 (M.D.N.C. Mar. 21, 2016) (unpublished). Plaintiff has demonstrated, at most, harmless error. *Supra* n. 5.

11

surface tear in the infraspinatus tendon and overgrowth of the acromioclavicular ("AC") joint with impingement on the rotator cuff was also noted. (*Id.* at 26, 436-37.)

On March 26, 2013, Plaintiff complained of pain in her right leg but her physical examination did not show that there were deficiencies in her extremities or neurological system. (*Id.* at 23, 462.) Next, on May 30, 2013, Plaintiff reported that her pain was only 5/10. (*Id.* at 23, 452.) On examination, Plaintiff had no joint abnormalities or swelling, full range of motion in all extremities, and 5/5 muscle strength. (*Id.* at 454.) She was told to continue ibuprofen as needed. (*Id.* at 454.)

In addition, as the ALJ properly noted, Plaintiff pursued a conservative course of treatment despite her alleged debilitating physical symptoms. (*Id.* at 24.) *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Plaintiff also took no medications except for vitamins, failing to take ibuprofen and other prescribed medications. (Tr. 25, 50-51, 369-72, 454). *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); 20 C.F.R. §§ 404.1530(b), 416.930(b). Plaintiff cited Wilson's disease as one reason for not taking prescribed medicine. (Tr. 25, 372, 454, 455.) However, the ALJ correctly noted that there was no indication from any physician suggesting that the prescribed medications affected her Wilson's disease or other symptoms.[9] (*Id.* at 25.)

Plaintiff also reported that she engaged in daily activities inconsistent with her allegations, such as cooking meals, doing laundry, cleaning up after herself, washing dishes, and going shopping in stores for food. (*Id.* at 19, 52, 299-300.) Despite her allegations of an

---

[9] The Court will address Plaintiff's indigence later in this Recommendation.

inability to use her hands, she also testified that she smoked half a pack of cigarettes a day. (*Id.* at 26, 53-54.) *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[10]

The ALJ also explained that while Plaintiff testified that she laid in bed to relieve leg pain once a day, no physician had prescribed such a behavior. (Tr. 26, 45.) Similarly, the ALJ noted that despite allegations of hand problems, the records did not show that a physician suggested surgery for her hand. (*Id.* at 26, 46.) Likewise, the ALJ also correctly noted that no physicians had suggested or presented enumerated limitations to any degree, nor had any physician suggested Plaintiff stop working, nor did the records demonstrate that Plaintiff required in-patient hospitalization, recurrent emergency room visits, or crisis center visits. (*Id.* at 26.) In contrast, as noted earlier, the state agency physician opined that Plaintiff did not have work-preclusive limitations. (*Id.* at 27, 63-84, 87-108.) *See Assar v. Colvin*, No. 1:10-cv-647, 2015 WL 506840, at *6-*7 (M.D.N.C. Feb. 6, 2015) (unpublished) *adopted by* 2015 WL 1097442 (March 11, 2015) (unpublished). For all these reasons, the ALJ's decision not to fully credit all of Plaintiff's alleged physical limitations was supported by substantial evidence.

### b. The ALJ's Decision to Partially Discount Plaintiff's Allegations of Mental Limitations Was Supported by Substantial Evidence.

Next, Plaintiff also testified that she had debilitating anxiety and depression that led to

---

[10] Plaintiff argues that the ALJ should have considered the frequency of her activities of daily living. (Docket Entry 15 at 27-28.) The ALJ did this. (Tr. 19.) Moreover, the ALJ also considered the "entire record" in formulating the RFC. (Tr. 21). *See Reid*, 769 F.3d at 865. In the record, Plaintiff indicated that she prepared meals daily, washed dishes daily, did laundry once a week, and went shopping in stores every month. (Tr. 299-300.) Moreover, as explained in detail herein, the ALJ relied on a great deal more than Plaintiff's activities of daily living to evaluate her credibility and determine her RFC. Plaintiff has failed to demonstrate any material error on this point.

13

crying and fatigue. (Tr. 51.) However, the ALJ noted that Plaintiff attended a consultative examination and that the consulting doctor's observations were inconsistent with Plaintiff's allegations of complete disability. (*Id.* at 25.) Specifically, the ALJ noted that on June 6, 2012, Plaintiff reported on time to the consultation and was accompanied by two friends. (*Id.* at 24, 404.) She reported that she had not had any mental health treatment or medication management. (*Id.* at 25, 405.) She denied suicidal ideation. (*Id.* at 25, 405.) There was no evidence of hallucinations, delusions or psychotic thought processes, and her thought processes were logical and coherent. (*Id.*)

Plaintiff "was [also] able to name the months of the year in forward and reverse directions without error. She could solve a simple arithmetic problem in her head. She was oriented to time place and person. She could perform four of five instructions. Auditory memory for digits, reflective of numerical attention span, was within normal limits for an individual her age, *i.e.*, six digits forward and five digits backward. With verbal contextual cues present, she was able to answer four of six questions correctly about a simple story read aloud to her. Verbal recall was two of four words after a ten minute interval. Insight and judgment were above average." (Tr. 25, 406.) Plaintiff also indicated she could manage funds effectively. (*Id.*) And, on June 9, 2012, a few days after her June 6, 2012 consultative appointment, a second medical consultant observed that while Plaintiff was tearful; her mood was appropriate, she was alert and oriented, she had good eye contact, fluent speech and clear thought, and her memory and concentration were both good. (*Id.* at 25, 410.) The ALJ also correctly pointed out that Plaintiff reported to a consultative examiner on June 9, 2012 that she did not drink

14

alcohol, after having indicated to another consultative examiner three days previously that she had one beer a week. (*Id.* at 26, 405, 411.)

Also, in July 2012, when Plaintiff reported to the ER complaining of tooth pain, she was noted to be alert, oriented, and cooperative. (*Id.* at 24, 420.) Her psychiatric examination was within normal limits. (*Id.* at 24, 421.) On March 26, 2013, Plaintiff reported to the Citrus County Health Department that she had anxiety and depression, and she was prescribed Zoloft (*id.* at 24, 462); but on May 30, 2013, when Plaintiff reported that she had depression and anxiety (*id.* at 452), she was assessed to have a mood and affect that were appropriate to the situation (*id.* at 454). Plaintiff was also inconsistent in describing the frequency of her anxiety attacks, at one point indicating she had no attacks since 2008, and at another point stating that she had two anxiety attacks in the last six months. (*Id.* at 27, 304-305.)

The ALJ also took into account in assessing Plaintiff's credibility that she engaged in daily activities inconsistent with her allegations, such as cooking meals, doing laundry, cleaning up after herself, washing dishes, and going shopping in stores for food. (*Id.* at 19, 27, 52, 299-300.) She also reported that she spent time with others and played cards with her friends occasionally. (*Id.* at 20, 301-02.) Moreover, the ALJ noted that at the administrative hearing, Plaintiff was able to provide answers to the questions presented with descriptions and explanations. (*Id.* at 20.) These activities also contradicted Plaintiff's alleged disability. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

As with her alleged physical limitations, the ALJ also noted that the state agency psychologists opined that Plaintiff did not have work-preclusive limitations. (Tr. 27, 68-69,

15

92-93). *See Assar*, 2015 WL 506840, at *6-*7. For all these reasons, the ALJ's decision not to completely credit all of Plaintiff's alleged limitations was supported by substantial evidence.[11]

## C. The ALJ Properly Considered Plaintiff's Inability to Pay for Medical Care.

In contesting the ALJ's decision, Plaintiff also contends the ALJ failed to properly address her inability to afford medical treatment and medications. (Docket Entry 15 at 23, 25.) This is not so. Instead, the ALJ stated, that while he would:

> never hold it against the claimant for not having insurance, the question remains if it is reasonable the claimant would not pursue lower cost or subsidized avenues to pay for treatment when contrasted with the allegations. Furthermore, I acknowledge the added obstacles of treatment with insurance problems and the high costs of medical treatment make it sometimes difficult for uninterrupted treatment. However, I cannot overlook that there is no evidence showing the claimant even attempted to get lower cost alternatives despite the claims of such symptomatic severity. This failure to even try to acquire subsidized help tends to suggest the symptoms may not be as severe as it is reasonable that one would at least attempt to get help.

(Tr. 26.)[12]

---

[11] Plaintiff contends that the ALJ erred in giving "minimal weight" to a third party function report submitted by her sister merely because it was from a family member. (Docket Entry 21 at 5 *referencing* Tr. 27, 287-295.) Plaintiff also contends that the ALJ erred by not further investigating the allegations of Plaintiff's sister. (*Id.*) It is true that the ALJ here did find the third party function report unreliable. (Tr. 27-28.) However, Plaintiff's sister also reported that she spends no time with Plaintiff except on the phone because they live in different states. (*Id.* at 27, 287.) Additionally, Plaintiff's sister provided little information on Plaintiff specifically, but rather provided information generally on Wilson's disease. (*Id.* at 27, 287-295.) Consequently, the ALJ did not err here in concluding that this third party function report was entitled to limited weight where it was contrary to the medical record, general as opposed to specific, and lacking entirely in any direct observation of Plaintiff herself. (*Id.* at 27-28.) These reasons, and reasons set forth elsewhere in this Recommendation, also support the decision of the ALJ not to investigate Plaintiff's sister further.

[12] Defendant also points out (Docket Entry 17 at n. 3) that Plaintiff's assertion that she could not afford a ten dollar co-pay at the free clinic is contradicted by testimony that she smoked a half a

16

"A claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

Moreover, Social Security Ruling 96-7p, provides that:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment . . . . For example:
>
> . . . .
>
> The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

SSR 96-7p, 1996 WL 374186, at *7-8. However, even if a claimant cannot afford medical treatment, she must "show that [s]he has exhausted all free or subsidized sources of treatment and document [her] financial circumstances before inability to pay will be considered good cause." *Gordon*, 725 F.2d at 237 (*referencing* SSR 82-59, 1982 WL 31384, at *4 (1982).)

Here, Plaintiff contends that she went to a clinic for treatment, but there was no evidence before the ALJ that she sought more aggressive means of treatment such as physical therapy, epidural injections, or surgery; that she attempted to see a medical specialist; that she sought to attend therapy for her alleged mental impairments, or that she sought financial

---

pack of cigarettes a day. (*Compare* Docket Entry 15 at 2 *with* Tr. 53-54.) The record does indeed reflect this, however, the Court need not rely on this observation in light of the other considerable substantial evidence described above.

17

assistance in obtaining medications. (Tr. 24-26.) *See, e.g., Turner v. Colvin*, No. 3:12-CV-00422-MOC, 2013 WL 1181603, at *4 (W.D.N.C. Mar. 21, 2013) (unpublished).

Moreover, the ALJ's credibility analysis turns on more than simply a negative credibility inference based upon Plaintiff's inability to secure additional medical care or medication. By way of non-exclusive example, no doctor that examined Plaintiff prescribed any limitations or suggested that she was unable to work. The non-examining physicians did not find that Plaintiff suffered from disabling limitations. Plaintiff's activities of daily living were also inconsistent with her allegations of complete disability. And, as noted, Plaintiff was also unwilling to take her medication because of its purported, and unsubstantiated, impact on her Wilson's disease. *See, e.g., Hose v. Colvin*, No. 1:15CV00662, 2016 WL 1627632, at *6 (M.D.N.C. Apr. 22, 2016) (unpublished); *Hamby v. Colvin*, No. 1:12-CV-00395-GCM, 2014 WL 1874979, at *6 (W.D.N.C. May 9, 2014) (unpublished); *Turner*, 2013 WL 1181603, at *4; *McKinney v. Astrue*, No. 5:06-CV-00998, 2008 WL 754109, at *14 (S.D.W. Va. Mar. 19, 2008) (unpublished). Consequently, Plaintiff has failed to demonstrate any material error on this issue.[13]

---

[13] Plaintiff also argues that the ALJ erred by posing hypotheticals to the VE with limitations not included in the RFC. (Docket Entry 15 at 29-30.) The ALJ is not required to adopt the limitations in every hypothetical to a VE. Instead, the ALJ is only required to adopt credibly established limitations when formulating the RFC. *Bryant v. Colvin*, No. 3:13-CV-349-JAG, 2014 WL 896983, at *12 (E.D. Va. Mar. 6, 2014) (unpublished) (noting an ALJ "is only required to include those limitations that the ALJ considers credibly established"). And, here, as explained above, the ALJ satisfied this obligation. Plaintiff also contends that the jobs of cartridge loader, cleaner/housekeeper, and sorter of agricultural produce exceed the scope of her RFC. (Docket Entry 21 at 10.) However, the VE testified that these jobs could be performed by an individual with an RFC identical to Plaintiff's, and Plaintiff points to no evidence to the contrary. (Tr. 29, 56-59.) *See, e.g.*, DOT § 323.687–014, 1991 WL 672783 (Cleaner, Housekeeping) (no exposure to vibrations); DOT 779.687-014, 1991 WL 680749 (Cartridge Loader) ("Vibration: Not Present - Activity or condition does not exist."). These

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's motions for judicial review (Docket Entry 15 and 20) be **DENIED**, Defendant's motion for judgment on the pleadings (Docket Entry 16) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

October 13, 2016
Durham, North Carolina

---

contentions lack merit.

19